UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENVER BRADLEY,

                Plaintiff,                CIVIL ACTION NO. 08-14973

        v.                    DISTRICT JUDGE DENISE PAGE HOOD

COMMISSIONER OF            MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

                Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

## I.    PROCEDURAL HISTORY

### A.    *Proceedings in this Court*

On December 2, 2008, Plaintiff filed the instant suit seeking judicial review of the

Commissioner's decision disallowing benefits (Dkt. No. 1).  Pursuant to 28 U.S.C. §

636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the

purpose of reviewing the Commissioner's partially unfavorable decision denying Plaintiff's

claim for a period of disability/disability insurance benefits (Dkt. No. 2).  This matter is currently

before the Court on cross-motions for summary judgment (Dkt. Nos. 10, 13).

- 1 -

**B.      *Administrative Proceedings***

Plaintiff filed the instant claims on October 25, 2004, alleging that he became unable to work on March 4, 2004 (Tr. at 44).  The claim was initially disapproved by the Commissioner on February 25, 2005 (Tr. at 35).  Plaintiff requested a hearing and, on April 20, 2007, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Regina Sobrino, who considered the case *de novo*.  In a decision dated May 18, 2007, the ALJ found that Plaintiff was disabled as of July 7, 2006 (Plaintiff's 55th birthday), but that Plaintiff was not disabled prior to that date (Tr. at 21).  Plaintiff requested a review of this partially unfavorable decision on July 16, 2007 (Tr. at 9).  The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC-1-2, Tr. at 2), the Appeals Council, on October 6, 2008, denied Plaintiff's request for review (Tr. at 3); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff was not disabled prior to July 7, 2006.  Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

II.     **STATEMENT OF FACTS**

A.      *ALJ Findings*

Plaintiff was 52 years of age at the time the alleged onset of his disability and 55 years

old at the time of the ALJ's decision (Tr. at 21, 44).  Plaintiff's relevant work history included

approximately 28 years as machine set-up person and janitor in the automobile industry (Tr. at

66-67, 175).

The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one

that Plaintiff had not engaged in substantial gainful activity since March 4, 2004 (Tr. at 17).  At

step two, the ALJ found that Plaintiff's degenerative joint disease was "severe" within the

meaning of the second sequential step.  *Id*.  Specifically, the ALJ found that Plaintiff has a

history of bilateral shoulder pain treated for a time with cortisone injections.  *Id.*  The ALJ noted

that, in March 2004, Plaintiff underwent surgery on his right shoulder for a partial rotator cuff

tear.  *Id.*  The ALJ also noted that Plaintiff also had a history of leg and joint pain, and that he has

symptoms of intermittent claudication in 2003, but that Doppler testing in 2004 was normal.  *Id.*

At step three, the ALJ found no evidence that Plaintiff's combination of impairments met

or equaled one of the listings in the regulations (Tr. at 18).  The ALJ next found that Plaintiff has

the residual functional capacity (RFC) to lift, carry, push and pull up to 10 pounds frequently and

lift and carry 20 pounds occasionally, that Plaintiff should be able to use both hands and keep

weight close to his body when he handles more than 10 pounds and should not push or pull more

than 10 pounds.  The ALJ also found that Plaintiff was able to stand and walk 6 hours per an 8

hour workday, that he should not climb ladders, ropes or scaffolds, but that he could climb stairs

occasionally. *Id.* The ALJ also found that Plaintiff could occasionally stoop, but should not kneel, crouch or crawl and should not be required to reach above shoulder level. *Id.* Finally, the ALJ found that Plaintiff should not be exposed to vibration or to concentrated fumes, dust, or gases. *Id.*

In arriving at this RFC, the ALJ considered Plaintiff's testimony concerning his daily activities as well as Plaintiff's medical records. In particular, the ALJ noted that Plaintiff's allegations of disabling symptoms since the onset date of disability are not fully substantiated. Specifically, the ALJ noted that Plaintiff testified that he walks for exercise, that Doppler testing on his lower extremities was normal in 2004 and that a physical examination of Plaintiff's legs was unremarkable (Tr. at 19). The ALJ also noted that Plaintiff testified that, approximately 3 months before the hearing, he experienced the onset of right knee swelling, and claimed that he had been using a cane for the previous 3 months when standing for extended periods of time. *Id.* The ALJ noted that Plaintiff lives alone, does laundry and drives locally and that, in November 2004, he did housework and prepared some meals. *Id.* Finally, the ALJ noted that, in January 2005, Plaintiff indicated that he was busy and active, could walk on a treadmill at 3 miles per hour for 30 minutes daily without difficulty and did household chores, although was unable to shovel snow, cut grass, rake, or do other activities involving extensive use of his right arm. *Id.*

The ALJ also noted that Plaintiff was 52 years old on the alleged onset date of disability, which is defined in the Social Security regulations as an "individual closely approaching advanced age" and that – on July 7, 2006 – Plaintiff attained 55 years of age and his age category changed to that of an "individual of advancing age." *See* 20 C.F.R. § 404.1563.

At step four, the ALJ found that Plaintiff could not perform his previous work as a machine set-up person, which was performed at a level of medium exertion. *Id*. At step five, the ALJ denied Plaintiff benefits prior to July 7, 2006 (the date Plaintiff's age category changed), as the ALJ found that Plaintiff could perform a significant number of jobs available in the national economy (Tr. at 20). Specifically, the ALJ found that Plaintiff had the RFC to perform light unskilled work with additional limitations. The vocational expert testified that Plaintiff would have been able to perform the requirements of certain light occupations such as: hand packer, production inspector, records clerk, cashier, counter clerk, rental clerk, order clerk or security guard (Tr. at 20). Finally, the ALJ found that – post-July 7, 2006 – there were not a significant number of jobs in the national economy Plaintiff could perform. In this regard, the ALJ noted that, approximately 3 months before the hearing, Plaintiff developed persistent right knee pain and swelling, thereby further limiting his ability to work (Tr. at 21).

### B.    *Administrative Record*

#### 1.    **Plaintiff's Testimony and Statements**

In a functional report dated November 3, 2004, Plaintiff reported that he spends most of his days watching television, eating, doing therapy for his shoulders, going to the store and smoking cigarettes (Tr. at 72-73). Plaintiff further reported that he does laundry once a week, which takes 2 hours, and does cleaning once a week, which takes one hour. Plaintiff testified during the hearing that his legs gave him trouble "standing and [during] long walks;" and that he was limited to "maybe 5 to 10 minutes" in standing in one place, primarily because of "circulation in my legs and my [right] knee when it swells," but that he could walk for "maybe 10

minutes" (Tr. 173-174).  He testified that he had a cane, but only used it when he was "going to

be standing for a while" (Tr. at 174).  Plaintiff testified that he had no difficulty sitting, that he

could lift a gallon of milk, but that he could not lift a 20 pound sack of potatoes and carry it

across the room (Tr. at 175).  He testified that, because of his bilateral shoulder problems, he has

difficulty reaching up over his head with both arms (Tr. at 176).  Plaintiff testified that he did his

own grocery shopping, but stated that he would have to use a cart instead of lifting groceries

himself (Tr. at 175-176).

### 2.    Medical Evidence

Plaintiff was first seen by Brian de Beaubien, M.D., an orthopedic surgeon, on February

5, 2002, with complaints of left shoulder pain "for over a year" (Tr. at 124).  Dr. de Beaubien's

initial impression was that Plaintiff suffered a "probable rotator cuff partial tear or full tear of the

left shoulder" (Tr. at 124).  Dr. de Beaubien recommended that Plaintiff start physical therapy,

prescribed the anti-inflammatory drug Celebrex, and noted that if Plaintiff did not improve then

he would consider a Depo-Medrol injection and/or surgical options.  *Id.*  Dr. de Beaubien next

saw Plaintiff on August 9, 2002, at which time Plaintiff advised that the physical therapy and

anti-inflammatory drugs really didn't help much and "just seemed to make things a bit worse"

(Tr. at 125).  On October 15, 2002, Plaintiff returned to Dr. de Beaubien, this time complaining

of pain in both shoulders; Dr. de Beaubien administered injections of Depo-Medrol into both

shoulders (Tr. at 125).  Plaintiff was next seen by Dr. de Beaubien on April 4, 2003, and

complained of flare-ups in both shoulders; Dr. de Beaubien again injected both shoulders with

Depo-Medrol (Tr. at 126).  Plaintiff returned to Dr. de Beaubien on October 7, 2003, and stated

that his left shoulder "has been doing relatively well" but that his right shoulder was "really quite

bad" (Tr. at 127).  Dr. de Beaubien determined at this point that the conservative course of

treatment had failed and he recommended surgery.  *Id.*

Dr. de Beaubien performed surgery on Plaintiff's right shoulder in March 2004 (Tr. at

107).  On March 19, 2004, Dr. de Beaubien noted that – two weeks post-surgery – Plaintiff was

"doing well," but that Plaintiff continued to have problems with his left shoulder and that he

thought that Plaintiff would require surgery on his left shoulder as well.  *Id.*  On April 20, 2004,

Plaintiff again returned to Dr. de Beaubien for a follow-up visit and again Dr. de Beaubien noted

that Plaintiff was "doing very well with [his right] shoulder" (Tr. at 107).  Dr. de Beaubien also

noted that Plaintiff's left shoulder continued to give him a lot of pain, thus Dr. de Beaubien

administered a Depo-Medrol injection into Plaintiff's left shoulder.  *Id.*

On June 1, 2004, Plaintiff returned to Dr. de Beaubien for three month postsurgical visit

and again Dr. de Beaubien noted that Plaintiff was "doing relatively well" that Plaintiff's "pain

relief [was] excellent," however, Dr. de Beaubien also noted that Plaintiff's "shoulder is still very

stiff and we need to work on this a lot" (Tr. at 107).  Dr. de Beaubien next saw Plaintiff on July

21, 2004, and noted that Plaintiff's "left shoulder is doing quite a bit better since the injection"

however, Plaintiff's "right shoulder continues to be a source of pain for him."  Dr. de Beaubien

also noted that Plaintiff "is still noticing a lot of weakness and also decreased range of motion,"

and that Plaintiff "still is having snapping through his exam which he was able to demonstrate to

me today" (Tr. at 106).  Dr. de Beaubien concluded that Plaintiff "still needs a lot of work" and

recommended that Plaintiff "continue physical therapy."

On September 1, 2004, Plaintiff returned to Dr. de Beaubien, again with complaints of trouble with both of his shoulders. Dr. de Beaubien injected Plaintiff's right shoulder with Depo-Medrol and Xylocaine and stated that he would inject Plaintiff's left shoulder the following week (Tr. at 105). On September 8, 2004, Plaintiff returned to Dr. de Beaubien for an injection into his left shoulder, and Dr. de Beaubien stated that Plaintiff "is probably going to end up having" surgery on the left shoulder (Tr. at 104). Dr. de Beaubien also noted that "the right shoulder seems to be doing quite a bit better since his injection which was done last week" (Tr. at 104). As to Plaintiff's long-term prognosis, Dr. de Beaubien stated that "it may be some time before [Plaintiff] is capable of doing any significant work. This, of course, is assuming that [Plaintiff] need something further done with the left shoulder" (Tr. at 104).

Plaintiff was next seen by Dr. de Beaubien on October 26, 2004, with Dr. de Beaubien noting that Plaintiff was "still doing relatively poorly in both shoulders despite having recent... injections" (Tr. at 103). Dr. de Beaubien stated "I am really questioning whether we are going to get [Plaintiff] back to a very functional status at work. He has less than 2 years before he retires anyway. It really may be better off to look into some type of an early buyout. I told him that if his left shoulder does not get better, then we are really looking at doing [surgery] through the scope which would have a relatively quick recovery time for him. However, [Plaintiff's] right shoulder still does not seem to be doing very well" (Tr. at 103). On November 24, 2004, Plaintiff returned to Dr. de Beaubien. At this time, Dr. de Beaubien noted that Plaintiff was "making no improvement" that "physical therapy has not helped him" and that Plaintiff's "right arm is really the source of his persistent trouble" (Tr. at 128). Dr. de Beaubien further noted that

"as far as the right shoulder goes, I really do not think that [Plaintiff] is going to end up with a very good result and I think that he is probably looking at a permanent disability here" (Tr. at 128).  The last time that Dr. de Beaubien saw Plaintiff as a patient was on January 19, 2005.  At this time, Dr. Beaubien noted that "as far as the right shoulder goes, I really did not have anything much left to offer him" (Tr. at 129).

The records of John Vincent, M.D., Plaintiff's personal physician, noted as far back as December 22, 2000 that Plaintiff had "a lot of problems with his left shoulder" (Tr. at 133). Beginning on February 12, 2002, Dr. Vincent began treating Plaintiff for pain in his knees and elbows (Tr. at 135-137).  On December 18, 2003, Dr. Vincent noted that Plaintiff suffered from leg cramps and that his lower extremities were "cool" to the touch (Tr. at 137).  Dr. Vincent referred plaintiff to George Carty, M.D., for "eval of intermittent claudication" (Tr. at 137).  On January 13, 2004, Dr. Carty conducted "Doppler waveform analysis"and reported that Plaintiff had "normal arterial hemodynamics for both lower extremities" (Tr. at 142).

### 3.    Vocational Expert

Vocational Expert (VE) Melody Henry testified during the hearing (Tr. at 188).  The ALJ asked Ms. Henry to assume a hypothetical worker with the age, educational and occupational background of Plaintiff, with the following additional limitations: "a person who is limited to lifting, carrying, pushing and pulling ... lifting and carrying no more than 10 pounds frequently, no more than 20 pounds occasionally, able to use hands and should be able to keep the weight close to the body when handling it... no pushing or pulling of more than 10 pounds...can stand and walk 6 hours of an 8 hour day, should not climb ladders, ropes, or scaffolds...should not have

- 9 -

to kneel, crouch, or crawl...is limited to occasional stair climbing, occasional stooping...should not have to reach above shoulder level...no exposure to vibration...no concentrated exposure to fumes, dust, or gases." Ms. Henry testified that such a worker could perform a range of light, unskilled jobs, such as hand packer, production inspector, records clerk and cashier (Tr. at 190). Ms. Henry testified that each of these jobs would be eliminated if standing and walking are limited to no more than 2 out of every 8 hours (Tr. at 191-192).

### C.   Parties' Arguments

#### 1.   Plaintiff's Claims of Error

In his motion for summary judgment, Plaintiff raises three claims of error: (1) that the decision of the ALJ is not supported by substantial evidence and is contrary to the great weight of the evidence of record; (2) that Defendant failed to carry its burden of proof that jobs existed in significant numbers that Plaintiff – given his limitations – could perform on a regular and sustained basis; and (3) that the ALJ failed to provide specific reasons for finding that Plaintiff's testimony was not fully credible. To bolster his arguments, Plaintiff submits the deposition of Dr. de Beaubien, Plaintiff's orthopedic surgeon. This deposition testimony was not submitted to the ALJ, but was submitted by Plaintiff to the Appeals Council. Indeed, the deposition was not taken until July 18, 2007, two months after the ALJ issued her partially unfavorable decision.

#### 2.   Commissioner's Counter-Motion for Summary Judgment

In response, Defendant argues that Plaintiff has waived a "sentence-six" remand by failing to seek it and, alternatively, Plaintiff lacks the requisite "good cause" necessary for a

sentence-six remand.[2]  Specifically, Defendant argues that Plaintiff fails to show good cause for why the evidence proffered in Dr. de Beaubien's deposition was not presented to the ALJ. Defendant further avers that Plaintiff's motion for summary judgment relies heavily on the deposition of Dr. de Beaubien and that, absent this deposition, the most limiting statement from Dr. de Beaubien concerning Plaintiff's physical condition was "I think that he is probably looking at permanent disability here" (Tr. at 128).

Defendant also notes that the ALJ did actually grant Plaintiff a permanent disability of upper extremity use (*i.e.* no lifting over 20 pounds, no weight away from body, no reaching above shoulder level and no pushing or pulling of over 10 pounds) (Tr. at 18).  Thus, Defendant argues that the ALJ's decision is entirely consistent with the medical records of Dr. de Beaubien and is thus supported by substantial evidence.

Defendant further argues that the ALJ reasonably relied on Plaintiff's testimony concerning his daily activities when assessing Plaintiff's credibility.  Specifically, Defendant argues that Plaintiff's testimony that he walked on a treadmill for 30 minutes a day without difficulty, did home chores and drove his car locally (Tr. at 108) supported the ALJ's RFC finding for a limited range of light work.  In sum, Defendant argues that the ALJ's credibility finding is supported by substantial evidence and should be affirmed.

---

[2] A "sentence-six" remand is a reference to the sixth sentence of 42 U.S.C. 405(g), which states that the Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..."

III.   **DISCUSSION**

    *A.*    ***Standard of Review***

    In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

    This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v.*

*Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

- 13 -

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B.   Governing Law

#### 1.   Burden of Proof

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). Benefits "are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden

- 15 -

transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir.

2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant

numbers exist in the national economy that [claimant] could perform given [his] RFC and

considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v)

and (g).

### 2.    Substantial Evidence

If the Commissioner's decision is supported by substantial evidence, the decision must be

affirmed even if the Court would have decided the matter differently and even where substantial

evidence supports the opposite conclusion.  *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at

545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

In weighing the opinions and medical evidence, the ALJ must consider relevant factors

such as the length, nature and extent of the treating relationship, the frequency of examination,

the medical specialty of the treating physician, the opinion's evidentiary support, and its

consistency with the record as a whole.  20 C.F.R. § 404.1527(d)(2)-(6).  Therefore, a medical

opinion of an examining source is entitled to more weight than a non-examining source and a

treating physician's opinion is entitled to more weight than a consultative physician who only

examined the claimant one time.  20 C.F.R. § 404.1527(d)(1)-(2).   A decision denying benefits

"must contain specific reasons for the weight given to the treating source's medical opinion,

supported by the evidence in the case record, and must be sufficiently specific to make clear to

any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the

reasons for that weight."  Soc.Sec.R. 9602p, 1996 WL 374188, *5 (1996).  The opinion of a

treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2).

### C.    Analysis and Conclusions

The ALJ determined that Plaintiff possessed the residual functional capacity to perform to a limited range of light work prior to July 7, 2006 (Tr. at 20).

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

The ALJ further found that Plaintiff could only perform such light work subject to additional limitations (*i.e.* push/pull 10 lbs. frequently; lift/carry 20 lbs. occasionally; keep weight close to body; stand/walk 6 hours per 8 hour day; no climbing ropes, ladders or scaffolds; occasionally stoop but no kneeling, crawling or crouching; **not reach above shoulder level**; not be exposed to vibration, fumes, dusts or gases) (Tr. at 18).

After review of the record, it appears that the ALJ utilized the proper legal standard in her application of the five-step disability analysis to Plaintiff's claim. Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the

- 17 -

Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Here, the ALJ found that some of Plaintiff's daily activities (*i.e.* walking on treadmill, shopping and driving, among others) were inconsistent with his claimed disability. As a matter of law, an ALJ may consider household and social activities in evaluating a disability claim. *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228 (6th Cir. 1990). The ALJ's findings also follow the opinions of the vocational expert, which came in response to proper hypothetical questions that accurately portrayed Plaintiff's physical impairments in harmony with the objective record medical evidence, and in particular, the findings and assessments of Dr. Carty (*i.e.* the negative Doppler findings). *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

As to Plaintiff's argument that the hypothetical presented to the VE was flawed, it is well-settled that "[t]he rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Redfield v. Comm'r of Soc. Sec.*, 366 F.Supp.2d 489, 497 (E.D. Mich. 2005). The ALJ is only required to incorporate the limitations that she finds credible. *Casey v. Sec'y of H.H.S.,* 987 F. 2d 1230, 1235 (6th Cir. 1993). This obligation to assess credibility extends to the claimant's subjective complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if she reasonably deems the claimant's testimony to be

- 18 -

inaccurate." *Jones*, 336 F.3d at 476.  Here, it appears that the hypothetical posed by the ALJ to

the VE was appropriately based on the ALJ's assessment of the facts.

Plaintiff's motion for summary judgement relies very heavily on the deposition testimony

of Dr. de Beaubien.  However, this evidence was not submitted to the ALJ for review.  Remand

for consideration of new and material evidence is appropriate only if the evidence relates to

Plaintiff's condition at the time of the administrative proceedings and if the Plaintiff shows

"good cause" for failing to submit the evidence during the administrative proceedings.  *See Jones*

*v. Commissioner*, 336 F.3d 469 (6th Cir. 2003); *Sizemore v. Secretary of H.H.S.*, 865 F.2d 709,

711-712 (6th Cir. 1988); *Oliver v. Secretary of H.H.S.*, 804 F.2d 964, 966 (6th Cir. 1986); *Wyatt*

*v. Secretary of H.H.S.*, 974 F.2d 680 (6th Cir. 1992).  The Sixth Circuit "takes a 'harder line' on

the 'good cause' test." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993).  Here, Plaintiff has

not addressed why he did not obtain the evidence proffered in Dr. de Beaubien's deposition prior

to the hearing before the ALJ.  The Court may not, therefore, remand for consideration of this

evidence, nor may the Court consider this evidence for purposes of a substantial evidence review

since – as noted in Footnote 1, above – the deposition of Dr. de Beaubien is not part of the

administrative record.

As to Plaintiff's argument that the ALJ erred in her credibility findings, the Court finds

that, when weighing credibility, an ALJ may give less weight to the testimony of interested

witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required

to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, 1999 WL

98645, *3 (6th Cir. 1999).  Furthermore, an ALJ's findings based on the credibility of an

applicant are to be accorded great weight and deference, particularly since the ALJ is charged

with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*,

127 F.3d 525, 531 (6th Cir. 1997). The undersigned finds that the ALJ adequately explained the

reasoning behind her credibility findings (*i.e.* Plaintiff's own testimony concerning his daily

activities) and finds no basis to disturb the ALJ's findings.

In sum, after a review of the record, the undersigned concludes that the decision of the

ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of

choice within which decision makers may go either way without interference from the courts,"

*Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's Motion for Summary

Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED** and the

decision of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within ten (10) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific

objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140

(1985); Howard v. Secretary of H.H.S., 932 F.2d 505, 508 (6th Cir. 1991); United States v.

Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues,

but fail to raise others with specificity, will not preserve all the objections a party might have to

this Report and Recommendation. Willis v. Secretary of H.H.S., 931 F.2d 390, 401 (6th Cir.

- 20 -

1991); <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this

magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court.  The response shall address

each issue contained within the objections specifically and in the same order raised.


 s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated:  August 18, 2009


<u>Certificate of Service</u>

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this
date, August 18, 2009, by electronic and/or ordinary mail.


s/Melody R. Miles
Case Manager to Magistrate Judge Mark A. Randon